**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

**Attorneys for Plaintiff**
*- additional counsel on signature page -*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

ELIZABETH KURLAND, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

v.

CHEGG, INC., DANIEL ROSENSWEIG, and ANDREW BROWN

Defendants.

Case No.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**

Plaintiff Elizabeth Kurland ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Chegg, Inc. ("Chegg" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons and entities that acquired Chegg securities between July 30, 2018 and September 25, 2018, both dates inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Chegg is a direct-to-student learning platform that provides educational materials and services to high school and college students. Chegg's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "CHGG."

3. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (i) that Chegg did not maintain sufficient data security measures; (ii) that the Company maintained insufficient internal controls and procedures to data breaches of its systems; (iii) consequently, the Company would become subject to increased expenses and litigation risks; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

4. On September 25, 2018, the Company reported that an unauthorized party had gained access on or around April 29, 2018 to approximately 40 million users' data, including username, email address, shipping address, and hashed Chegg password.

5. On this news, the Company's share price fell $3.91, or approximately 12%, to close at $28.42 per share on September 26, 2018, on unusually heavy trading volume.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this district.

10. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11. Plaintiff, as set forth in the attached Certification, acquired Chegg securities at artificially inflated prices during the Class Period and were damaged upon the revelation of the alleged corrective disclosures.

12. Defendant Chegg is incorporated under the laws of Delaware with its principal executive offices located at 3990 Freedom Circle, Santa Clara, California 95054. Chegg's common stock trades on the NYSE under the symbol "CHGG."

13. Defendant Daniel Rosensweig was the Chief Executive Officer of the Company at all relevant times.

14. Defendant Andrew Brown was the Chief Financial Officer of the Company at all relevant times.

15. The Defendants referenced above in ¶¶ 13-14 are sometimes referred to herein collectively as the "Individual Defendants."

16. The Individual Defendants possessed the power and authority to control the contents of Chegg SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

17. Chegg is a direct-to-student learning platform that provides educational materials and services to high school and college students.

**Materially False and Misleading
Statements Issued During the Class Period**

18. The Class Period begins on July 30, 2018, when the Company issued a press release, tilted: "*Chegg Reports Q2 2018 Financial Results and Raises Full Year 2018 Guidance*" which stated in relevant part:

> "We had a great Q2; achieving 32% total revenue growth, driven by 38% year-over-year Chegg Services revenue growth and subscriber growth of 45%," said Dan Rosensweig, Chairman and CEO of Chegg, Inc. "We expanded our services, introduced the Chegg Math Solver subscription and, through the acquisition of StudyBlue, added flashcards, one of the most popular learning tools used by students around the world. We enter the fall semester with significant momentum, giving us confidence to once again raise our guidance for the year."
>
> **Q2 2018 Highlights:**
>
> - **Total Net Revenues** of $74.2 million, an increase of 32% year-over-year
> - **Chegg Services Revenues** grew 38% year-over-year to $61.8 million, or 83% of total net revenues, compared to 79% in Q2 2017
> - **Net Loss** was $3.9 million
> - **Non-GAAP Net Income** was $15.5 million
> - **Adjusted EBITDA** was $19.3 million
> - **1.7 million:** number of Chegg Services subscribers, an increase of 45% year-over-year
> - **158 million:** total Chegg Study content views, an increase of 62% year-over-year

19. Defendant Rosensweig made prepared remarks in the press release, in which he stated that "[i]t's been an exciting first half of 2018, and we are thrilled to report another great quarter…. Students trust Chegg to provide services that help them master their academic experience and we feel that we are in the very early stages of services we can provide to help students to improve their outcomes. As such, we will continue to expand the products and services we offer when we see an opportunity to address key pain points." The press release was filed with the SEC as Exhibit 99.01 to a Form 8-K filed that same day.

20. Also on July 30, 2018, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2018. In addition to highlighting the financial results disclosed in the press release, the Form 10-Q stated in relevant part:

> ***Computer malware, viruses, hacking, phishing attacks and spamming could harm our business and results of operations.***
>
> Computer malware, viruses, physical or electronic break-ins and similar disruptions could lead to interruptions and delays in our services and operations and loss, misuse or theft of data. For instance, in December 2017, researchers identified significant CPU architecture vulnerabilities commonly known as "Spectre" and "Meltdown" that allow malicious programs to gain access to data. While chip makers and companies that provide widely used operating systems have released patches and updates, this process is still ongoing. Computer malware, viruses, computer hacking and phishing attacks against online networking platforms have become more prevalent and may occur on our systems in the future. We believe that we could be a target for such attacks because of the incidence of hacking among students.
>
> Any attempts by hackers to disrupt our website service or our internal systems, if successful, could harm our business, be expensive to remedy and damage our reputation or brand. Our network security business disruption insurance may not be sufficient to cover significant expenses and losses related to direct attacks on our website or internal systems. Efforts to prevent hackers from entering our computer systems are expensive to implement and may limit the functionality of our services. Though it is difficult to determine what, if any, harm may directly result from any specific interruption or attack, any failure to maintain performance, reliability, security and availability of our products and services and technical infrastructure may harm our reputation, brand and our ability to attract students to our website. Any significant disruption to our website or internal computer systems could result in a loss of students, colleges or brands and, particularly if disruptions occur during the peak periods at the beginning of each academic term, could adversely affect our business and results of operations.

21. The Form 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by the Individual Defendants, stating that the filing "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]"

22. The above statements identified in ¶¶ 18-21 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (i) that Chegg did not maintain sufficient data security measures; (ii) that the Company maintained insufficient internal controls and procedures to data breaches of its systems; (iii) consequently, the Company would become subject to increased expenses and litigation risks; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

23. On September 25, 2018, the Company filed a Form 8-K with the SEC, stating in relevant part:

> On September 19, 2018, Chegg learned that on or around April 29, 2018, an unauthorized party gained access to a Company database that hosts user data for chegg.com and certain of the Company's family of brands such as EasyBib. The Company understands that the information that may have been obtained could include a Chegg user's name, email address, shipping address, Chegg username, and hashed Chegg password. The investigation into the incident, which is supported by third-party forensics, is ongoing. To date, the Company understands that no social security numbers or financial information such as users' credit card numbers or bank account information were obtained. The Company expects to start notifying approximately 40 million active and inactive registered users and certain regulatory authorities on September 26, 2018.

24. On this news, the Company's share price fell $3.91, or approximately 12%, to close at $28.42 per share on September 26, 2018.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

25. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Chegg securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the

Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

26. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Chegg securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Chegg or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

28. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

29. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Chegg;

- whether the Individual Defendants caused Chegg to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Chegg securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

30. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

31. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Chegg securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Chegg securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

32. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

33. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

34. Plaintiff repeats and reallege each and every allegation contained above as if fully set forth herein.

35. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

36. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Chegg securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Chegg securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

37. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Chegg securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Chegg finances and business prospects.

38. By virtue of their positions at Chegg, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

39. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Chegg, the Individual Defendants had knowledge of the details of Chegg internal affairs.

40. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Chegg. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Chegg businesses, operations, future financial

condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Chegg securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Chegg business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Chegg securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

41. During the Class Period, Chegg securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Chegg securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Chegg securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Chegg securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

42. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

43. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and

sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

44. Plaintiff repeats and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

45. During the Class Period, the Individual Defendants participated in the operation and management of Chegg, and conducted and participated, directly and indirectly, in the conduct of Chegg business affairs. Because of their senior positions, they knew the adverse non-public information about Chegg misstatement of income and expenses and false financial statements.

46. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Chegg financial condition and results of operations, and to correct promptly any public statements issued by Chegg which had become materially false or misleading.

47. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Chegg disseminated in the marketplace during the Class Period concerning Chegg results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Chegg to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Chegg within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Chegg securities.

48.     Each of the Individual Defendants, therefore, acted as a controlling person of Chegg. By reason of their senior management positions and/or being directors of Chegg, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Chegg to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Chegg and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

49.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Chegg.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: November 5, 2018                    Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
            ahood@pomlaw.com
            jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Email: peretz@bgandg.com

*Attorneys for Plaintiff*

**Submission Date**

2018-10-31 09:25:16

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.   I  make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Chegg, Inc. ("Chegg" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Chegg securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Chegg securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Chegg securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

# Name

**Print Name**

Elizabeth Kurland

# Acquisitions

**Configurable list (if none enter none)**

| Date Acquired | Number of Shares Acquired | Price per Share Acquired |
|---|---|---|
| July 29,2018 | 18 | $29.14 |

# Sales

**Documents & Message**

**Upload your brokerage statements showing your individual purchase and sale orders.**
(redacted)

**Signature**



**Full Name**

Elizabeth Kurland

(redacted)

**Chegg, Inc. (CHGG)**                                                                                              **Kurland, Elizabeth**

## List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| 7/29/2018 | Purchase | 18 | $29.1400 |